IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

CHRISTI MCDANIEL,           §
    PLAINTIFF,                §
                     §
VS.                         §   CIVIL ACTION NO. 4:13-CV-989-O
                     §
CAROLYN W. COLVIN,          §
ACTING COMMISSIONER OF SOCIAL §
SECURITY,                   §
    DEFENDANT.               §

FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND
NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of

Title 28, United States Code, Section 636(b). The Findings, Conclusions, and Recommendation

of the United States Magistrate Judge are as follows:

FINDINGS AND CONCLUSIONS

I. STATEMENT OF THE CASE

Plaintiff Christi McDaniel ("McDaniel") filed this action pursuant to Sections 405(g) and

1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the

Commissioner of Social Security denying her claims for a period of disability and disability

insurance benefits under Title II, and supplemental security income ("SSI") benefits under Title

XVI of the Social Security Act ("SSA"). In April 2011, McDaniel applied for social security

benefits, alleging that her disability began on March 1, 2011. (Transcript ("Tr.") 15, 123-32.)

Her applications were denied initially and on reconsideration, and McDaniel requested a hearing

before an administrative law judge ("ALJ"). (Tr. 15, 70-84.) An ALJ held a hearing on May 8,

2012 and issued a decision on August 2, 2012 that McDaniel was not disabled. (Tr. 12-25, 32-

63.)  On October 10, 2013, the Appeals Council denied McDaniel's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner.  (Tr. 1-3.)

## I.   STANDARD OF REVIEW

Disability insurance is governed by Title II, 42 U.S.C. § 404 *et seq.*, and SSI benefits are governed by Title XVI, 42 U.S.C. § 1381 *et seq.*, of the SSA.  In addition, numerous regulatory provisions govern disability insurance and SSI benefits.  *See* 20 C.F.R. Pt. 404 (disability insurance); 20 C.F.R. Pt. 416 (SSI).  Although technically governed by different statutes and regulations, "[t]he law and regulations governing the determination of disability are the same for both disability insurance benefits and SSI." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

The SSA defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity.  42 U.S.C. §§ 423(d), 1382a(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).  To determine whether a claimant is disabled and thus entitled to disability benefits, a five-step analysis is employed.  20 C.F.R. §§ 404.1520, 416.920.  First, the claimant must not be presently working at any substantial gainful activity.  Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit.  20 C.F.R. §§ 404.1527, 416.972.  Second, the claimant must have an impairment or combination of impairments that is severe.  20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  Third, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing"), 20 C.F.R. Pt. 404, Subpt. P, App. 1.  20 C.F.R. §§ 404.1520(d), 416.920(d).  Fourth, if disability cannot be found on the basis of the claimant's medical status alone, the impairment or

2

impairments must prevent the claimant from returning to her past relevant work.  *Id.* §§ 404.1520(e), 416.920(e).  Fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience.  *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel*, 197 F.3d 197, 197–98 (5th Cir. 1999).  At steps one through four, the burden of proof is on the claimant to show she is disabled. *Crowley*, 197 F.3d at 198.  If the claimant satisfies this responsibility, the burden shifts to the Commissioner to show that there is other gainful employment the claimant is capable of performing in spite of her existing impairment.  *Id.*

A denial of disability benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole.  *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988).  Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion.  *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).  It is more than a mere scintilla but less than a preponderance.  *Id.*  A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision.  *Id.*  This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's but will carefully scrutinize the record to determine if evidence is present.  *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *Hollis*, 837 F.2d at 1383.

## II.  ISSUES

In her brief, McDaniel presents the following issues:

1. Whether, at Step Two, the ALJ applied the proper legal standard in evaluating McDaniel's obesity and/or hearing loss and whether the ALJ's findings relating to such impairments are supported by substantial evidence;

2.   Whether the ALJ erred in analyzing the medical opinions in the evidence; and

3.   Whether the ALJ's residual functional capacity ("RFC") determination is defective because it did not contain limitations relating to all of her impairments.

(Plaintiff's Brief ("Pl.'s Br.") at 8-24.)

## III. ALJ DECISION

In his August 2, 2012 decision, the ALJ found that McDaniel met the insured status requirements of the SSA through September 30, 2014 and had not engaged in any substantial gainful activity since March 1, 2011, the alleged date of McDaniel's onset of her disability. (Tr. 17.) The ALJ further found that McDaniel suffered from the severe impairments of major depressive disorder, bipolar disorder, and anxiety disorder. (Tr. 17.)

Next, the ALJ held that none of McDaniel's impairments, or combination of impairments, met or equaled the severity of any impairments in the Listing. (Tr. 18-20.) As to McDaniel's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels, but is limited to simple job tasks involving simple decision making, occasional public contact, and occasional co-worker interaction.

(Tr. 20 (emphasis omitted).) Next, the ALJ found that McDaniel was not able to perform any of her past relevant work. (Tr. 23.) However, because the ALJ found that there were jobs that existed in significant numbers in the national economy that McDaniel could perform, the ALJ concluded that McDaniel was not disabled. (Tr. 24.)

4

## IV.  DISCUSSION

### A.  **Step Two Issues**

As to Step Two, McDaniel first complains that the ALJ applied the incorrect legal standard in evaluating her impairments of hearing loss and/or obesity.  (Pl.'s Br. at 9-11.) Specifically, McDaniel argues that the ALJ erred in failing to apply or cite to the severity standard set forth in *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985).  (*Id.*)  To evaluate whether a claimant's medical condition qualifies as a "severe impairment" at Step Two of the analysis, the Commissioner has issued regulations that define a "severe impairment" as one that "significantly limits [a claimant's] physical or mental ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 416.920(c); *cf. id.* § 404. 1521(a), 416.921(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").  The Fifth Circuit, however, has held that a literal application of that definition is inconsistent with the statutory language and legislative history of the SSA.  *See Stone*, 752 F.2d at 1104–05.  Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only when it is a "slight abnormality" having "such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."  *Id.* at 1101 (emphasis added).

In this case, in setting forth the law regarding the sequential disability evaluation, the ALJ stated the following:

> At step two, the undersigned must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c) and 416.920(c)).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  An impairment or combination of impairments is "not severe" when

medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521 and 416.921; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p). If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

(Tr. 16.) In addition, the ALJ stated:

The second step of the sequential evaluation involves determining whether the claimant has a severe impairment, which is defined as an impairment or combination of impairments which significantly limits (has more than a minimal effect on) an individual's ability to perform basic work activities. The claimant's conditions produce limitations that meet this definition of "severe," as will be clear from the discussion of the claimant's residual functional capacity later in this decision.

(Tr. 17.)

In this case, McDaniel is correct in that the ALJ did not recite the *Stone* standard or set forth the proper standard in his discussion of the severity of McDaniel's impairments. In *Stone*, the Fifth Circuit stated that it would assume that the ALJ had applied an incorrect standard to the severity requirement unless the correct standard was either set forth by reference to *Stone* or expressly stated in the decision. 752 F.2d at 1106. The Fifth Circuit stated that, "[u]nless the correct standard is used, the claim must be remanded to the Secretary for reconsideration." *Id.*

However, procedural perfection is not required unless it affects the substantial rights of a party. *See Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). In 2012, the Fifth Circuit published an opinion clarifying that even if the ALJ errs in failing to follow the procedures set out in *Stone*, such error does not require remand unless the claimant is harmed by the error. *Taylor v. Astrue*, 706 F.3d 600, 603 (5th Cir. 2012). Under *Taylor*, therefore, a *Stone* error no longer requires automatic remand but instead is subject to a harmless-error analysis. *See id.*

6

Thus, the Court's analysis turns to the second issue raised by McDaniel, which is whether the ALJ's determination at Step Two is supported by substantial evidence.

In her second issue, McDaniel argues that the ALJ's failure to find that her impairments of obesity and/or hearing loss were severe is not supported by substantial evidence. (Pl.'s Br. at 11-15.) McDaniel argues that she has been battling weight issues since she was a child and that she and her husband informed "the Agency that obesity was contributing to her disability." (Pl.'s Br. at 12.) McDaniel claims that she explained that she has low back pain and extreme fatigue, difficulty standing and ambulating and a lack of stamina. (*Id.*) McDaniel claims that the SSA had her examined for obesity by David Ray, D.O. ("Dr. Ray"). (Pl.'s Br. at 12.) According to a June 28, 2011 consultative examination report, Dr. Ray: (a) noted McDaniel's fatigue and unintentional weight gain; (b) stated she was "positive for myalgias" and had diminished reflexes in both her knees; (c) labeled her with hearing loss and morbid obesity class 2; and (d) associated her fatigue with her obesity. (Pl.'s Br. at 12-13.) McDaniel further states that, "[a]fter this examination, a physician from the Agency reviewed Ms. McDaniel's file and found that she indeed grapples with a severe physical impairment (obesity) (Tr. 190, 198, 360-67)." (Pl.'s Br. at 12 (footnote omitted).) McDaniel also argues that her fatigue, which is associated with her obesity, can "veritably create functional restrictions." (Pl.'s Br. at 13.) In addition, McDaniel claims that she has not been able to see a physician for her low back pain, which most likely also stems from her obesity, due to lack of insurance and financial constraints. (Pl.'s Br. at 14.) As to her hearing loss, McDaniel claims that the ALJ erred in failing to consider that her hearing loss was aggravating her mental health issues and impacted her ability to interact with others. (Pl.'s Br. at 15.) McDaniel argues that the ALJ failed to consider how her impairments in combination affected her ability to work. (*Id.*).

7

As stated above, the ALJ found at Step Two, *inter alia*, that McDaniel suffered from the

severe mental impairments of major depressive disorder, bipolar disorder, and anxiety disorder.

(Tr. 17.)  As to McDaniel's obesity and hearing loss, the ALJ stated:

> In addition, the claimant received diagnosis of obesity, hypertension, and
> hearing problems.  However, the medical evidence does not indicate that it causes
> more than minimal limitations in her basic work activities.    The claimant
> underwent an internal medicine consultative examination in June 2011 that
> revealed that she has hearing loss in both ears and wears hearing aids in both ears
> (Exhibit 5F/2).    However, it revealed that she spoke clearly and in complete
> sentences, and her hearing appeared to be intact.  (Id.)  She stepped onto and off
> the exam table without difficulty, and verified that she could perform a full range
> of daily activities.  (Id.)  Moreover, she could perform floor squats and lift a 14-
> pound stool without difficulty, and she had a normal gait.  (Exhibit 5F/2-3).  As
> such, her obesity, with a BMI of 38.1, was not severe in evaluating it pursuant to
> Social Security Ruling 02-1p (Exhibit 5F/3). . . .

(Tr. 18.)

The Court notes that the Social Security rulings recognize that obesity, though not a listed

impairment, can reduce an individual's occupational base for work activity in combination with

other ailments.  *See* 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.00(Q); Social Security Ruling

("SSR") 02-1p, 2000 WL 628049, at *5-7 (S.S.A. Sept. 12, 2002).  A claimant's obesity must be

considered at all steps of the sequential evaluation process.  SSR 02-1p, 2000 WL 628049, at *3.

The ALJ must perform an "individualized assessment of the impact of obesity on an individual's

functioning when deciding whether the impairment is severe." *Id.* at *4.

Based on the foregoing, it is clear that the ALJ was aware of and considered McDaniel's

impairments of obesity and hearing loss, separately and in combination, in his decision at Step

Two. (Tr. 18.)  In addition, the ALJ pointed out several times in his decision that McDaniel had

a fear of driving due to her hearing loss and had problems hearing.  (Tr. 18, 21, 22.)  In addition,

the ALJ noted that McDaniel was capable of performing a wide range of daily activities,

including dressing, bathing, preparing her meals, shopping for groceries, cleaning her camper,

caring for her dogs and chickens, and going dancing with her husband. (Tr. 18-19, 22.) Moreover, McDaniel does not point to any evidence in the record indicating that her alleged obesity or hearing loss caused any work-related limitations beyond those already found by the ALJ in his RFC determination.[1] *See, e.g., Lewis v. U.S. Comm'r Soc. Sec. Admin.*, No. 07-CV-1617, 2008 WL 5459741, at *2 (W.D. La. Dec. 1, 2008) (affirming when claimant raised the lack of specific discussion of obesity but did not identify any obesity-causing limitation that was not considered by the ALJ). The mere presence or diagnosis of some impairment is not disabling per se. *See Hames v. Heckler*, 707 F.2d 162, 165 (5th Cir. 1983). Thus, remand is not required.

In conclusion, the Court concludes that the ALJ's failure to cite to *Stone* or the *Stone* severity standard did not affect McDaniel's substantial rights; thus, McDaniel was not harmed by the error. *See Taylor*, 2012 WL 6965181, at *2; *Mays*, 837 F.2d at 1364. Here, substantial evidence supports the ALJ's finding that McDaniel's obesity and hearing loss were not severe.

---

[1] The Court notes that the medical evidence cited to by McDaniel in support of her arguments does not support that her obesity and hearing loss caused any work-related limitations. As set forth above, McDaniel, citing to the consultative examination with Dr. Ray, claims that he (a) noted her fatigue and unintentional weight gain; (b) stated she was "positive for myalgias" and had diminished reflexes in both her knees; (c) labeled her with hearing loss and morbid obesity class 2; and (d) associated her fatigue with her obesity. (Pl.'s Br. at 12-13.) A review of Dr. Ray's examination indicates that the majority of the above statements appear to be a recitation of the history of McDaniel's symptoms as reported by McDaniel. (Tr. 298.) During the physical examination section of the report, Dr. Ray stated that McDaniel was "well developed, well nourished; well groomed; no apparent distress." (Tr. 299.) In addition, a physical examination of her musculoskeletal system indicated she had a normal gait and a physical examination of her neurological system indicated that, while her knee jerks bilateral +1, she has normal heel-to-toe coordination, squats to the floor and rises without difficulty, and can walk without difficulty. (Tr. 299-300.) Furthermore, an examination of McDaniel's back indicated no muscle atrophy, no pain elicited and full active range of motion with flexion. (Tr. 300.)

Moreover, McDaniel, citing also to the Transcript at 190, 198, 360-67, claims that such evidence indicates she "grapples with a severe physical impairment." (Pl.'s Br. at 12.) The first two documents, however, are Sequential Vocational Guides that indicate McDaniel cannot perform her past relevant work but that there are other jobs that exist in significant numbers in the national economy that she can perform. (Tr. 190, 198.) The third document is a Physical Residual Functional Capacity Assessment ("PRFCA") dated August 11, 2011 in which State Agency Medical Consultant Veena Ghai, M.D. ("SAMC Ghai"), opines, based on a primary diagnosis of unspecified hearing loss and a secondary diagnosis of obesity, that McDaniel was capable of the following: (1) lifting and/or carrying up to fifty pounds occasionally and twenty-five pounds frequently; (2) sitting, standing and/or walking about six hours in an eight-hour workday; and (3) unlimited pushing and or pulling. (Tr. 361.) In addition, SAMC Ghai indicated that McDaniel had no postural, manipulative, communicative, environmental, or visual limitations. (Tr. 362-64.)

Based on the evidence in the record as set forth above, the Court concludes that substantial evidence supports the ALJ's severity determination. Thus, any error by the ALJ in not following the specific procedures set out in *Stone* is harmless. *See Taylor*, 706 F.3d at 603.

## B. **Medical Opinion Evidence**

Next, McDaniel argues that the ALJ committed legal error by failing to consider and weigh the medical opinion evidence in the record. (Pl.'s Br. at 16.) Specifically, McDaniel claims that the ALJ provided only cursory review of important medical records of her treatment at Pecan Valley MHMR, where she was treated for "the entire period at issue." (Pl.'s Br. at 16.) McDaniel further argues that the ALJ "devoted just one paragraph to discuss Ms. McDaniel's treating [mental health ("MH")] sources," "regurgitate[ing] approximately nine pages of evidence from a file containing 164 pages of MH notes." (*Id.*) McDaniel states that, "[s]imply put, this is an unfair synopsis of Ms. McDaniel's MH regimen." (Pl.'s Br. at 17.) In addition, McDaniel argues that the ALJ: (1) "skipped past Ms. McDaniel's history of significant psychiatric symptoms including homicidal ideation," including that she had a "preference of connecting with 'chickens' rather than humans," and (2) has had "several medication adjustments and a cyclical response to treatment." (Pl.'s Br. at 17.) Furthermore, McDaniel argues that the "ALJ never tackled the copious number of specific mental limitations noted by the Agency's psychiatrist," SAMC Ghai in the August 11, 2011 Mental Residual Functional Capacity Assessment ("MRFCA") (Pl.'s Br. at 18.)

In making an RFC assessment, the ALJ must consider all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1 (S.S.A. July 2, 1996); SSR 96-8p, 1996 WL 374184, at *5 (S.S.A. July 2, 1996).

The regulations, rulings, and relevant case law reflect that the ALJ should weigh all of the medical source opinions and articulate the reasons underlying the decisions he has made. *See generally* 20 C.F.R. §§ 404.1527(b), 416.927(b). The ALJ is entitled to consider treatment history or any other relevant factor that tends to support or contradict a medical source opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).

Controlling weight is assigned to the opinion of a treating physician if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995); *Bowman v. Heckler*, 706 F.2d 564, 568 (5th Cir. 1983). However, the determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett v. Chater*, 67 F.2d 558, 566 (5th Cir. 1988); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Conclusory statements to the effect that the claimant is disabled or unable to work are legal conclusions, not medical opinions, and are not entitled to any special significance. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d); *see also Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003).

Moreover, findings of fact made by state agency medical and psychological consultants regarding the nature and severity of an individual's impairments are treated as expert opinion evidence (from non-examining sources) at both the administrative hearing and Appeals Council levels of administrative review. 20 C.F.R. §§ 404.1527(e), 416.927(e); SSR 96-6p, 1996 WL 34180, at *2-4 (S.S.A. July 2, 1996). Pursuant to SSR 96-6p, the ALJ and the Appeals Council are not limited by the state agency physicians' opinions, but may not ignore them and must

explain the weight given to these opinions in their decisions.  SSR 96-6p, 1996 WL 374180, at *2.

In this case, McDaniel complains, in essence, that the ALJ provided too cursory of a review of some of her mental health medical records and the opinion of her treating physician and failed to set forth all the mental limitations noted by the SAMC.  After review of the ALJ's decision, however, it is clear that the ALJ properly considered the medical evidence in the record relating to McDaniel's mental health issues.  In fact, the ALJ specifically found that McDaniel suffered from the severe impairments of major depressive disorder, bipolar disorder, and anxiety disorder and included limitations in the RFC determination to account for such impairments. (Tr. 17-23.)  Moreover, as to the State Agency Medical Consultant's opinion regarding McDaniel's functional limitations, the ALJ specifically mentioned such opinion and gave it, along with the other SAMC mental RFC opinions, "great weight."  (Tr. 23.)

The ALJ is not required to discuss every piece of evidence in the record nor must the ALJ follow formalistic rules of articulation.  *See Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005) (per curium) ("That the ALJ did not specifically cite each and every piece of medical evidence considered does not establish an actual failure to consider the evidence."); *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994) ("That [the ALJ] did not follow formalistic rules in his articulation compromises no aspect of fairness or accuracy that this process is designed to ensure.").  In *Hammond v. Barnhart,* 124 F. App'x 847, 851 (5th Cir. 2005), the Court stated, the "ALJ's failure to mention a particular piece of evidence does not necessarily mean that he failed to consider it," and "there is no statutorily or judicially imposed obligation for the ALJ to list explicitly all the evidence he takes into account in making his findings."  Because the ALJ did not err, remand is not required.

## C. **Including All Limitations in RFC Determination**

McDaniel also argues that the ALJ erred in his RFC determination when he failed to include limitations relating to all of her impairments. (Pl.'s Br. at 19-24.) Specifically, McDaniel states:

> The ALJ committed two legal errors in regard to his RFC finding. First, the ALJ erred for not including Ms. McDaniel's severe physical impairments (obesity and hearing loss) in his RFC finding (Arguments A and B). Second, the ALJ violated Agency policy regarding the formulation of a RFC finding for restrictions concerning mental disorders.

(Pl.'s Br. at 20 (footnotes omitted).)

RFC is what an individual can still do despite his limitations.[2] SSR 96-8p, 1996 WL 374184, at *2. It reflects the individual's maximum remaining ability to do sustained work activity in an ordinary work setting on a regular and continuing basis. *Id.*; *see Myers v. Apfel*, 238 F.3d 617, 620 (5th Cir. 2001). A regular and continuing basis is an eight-hour day, five days a week, or an equivalent schedule. SSR 96-8p, 1996 WL 374184, at *2. RFC is not the least an individual can do but the most. *Id.* The RFC is a function-by-function assessment, with both exertional and nonexertional[3] factors to be considered, and is based upon all of the relevant evidence in the case record. *Id.* at 3-6. The responsibility for determining a claimant's RFC lies with the ALJ. *See Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990). The ALJ must

---

[2] The Commissioner's analysis at steps four and five of the disability evaluation process is based on the assessment of the claimant's RFC. *Perez v. Barnhart*, 415 F.3d 457, 461-62 (5th Cir. 2005). The Commissioner assesses the RFC before proceeding from step three to step four. *Id.*

[3] Exertional capacity addresses an individual's ability "to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling." SSR 96-8p, 1996 WL 374184, at *5. Each function must be considered separately, but the final RFC assessment may combine activities. *Id.* Nonexertional capacity "considers all work-related limitations and restrictions that do not depend on an individual's physical strength," including mental limitations. *Id.* at *6.

discuss the claimant's ability to perform sustained work activity on a regular and continuing basis and resolve any inconsistencies in the evidence. SSR 96-8p, 1996 WL 374184, at *7.

As stated above, in making an RFC assessment, the ALJ must consider all symptoms, including pain, and the extent to which these symptoms can be reasonably accepted as consistent with objective medical evidence and other evidence. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 96-7p, 1996 WL 374186, at *1; SSR 96-8p at *5. The ALJ must also consider limitations and restrictions imposed by all of an individual's impairments, even impairments that are not severe. *Id.* The ALJ is permitted to draw reasonable inferences from the evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See, e.g.*, SSR 86-8, 1986 WL 68636, at *8 (S.S.A. 1986), *superseded by* SSR 91-7C, 1991 WL 231791, at *1 (S.S.A. Aug. 1, 1991) (only to the extent the SSR discusses the former procedures used to determine disability in children). The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record.").

With respect to the first issue regarding McDaniel's obesity and hearing loss, the Court has already determined that the ALJ did not err in finding that McDaniel did not suffer from the severe impairments of obesity and hearing loss. The ALJ, as set forth above, thoroughly considered such impairments throughout his decision and did not include any limitations in the RFC determination because he did not find such limitations were warranted.

As to the second issue regarding formulating the RFC for mental disorders, McDaniel, citing to several Social Security Rulings, argues that the ALJ erred in making an RFC

determination that failed to set forth the specific functional limitations related to her mental impairment, including the abilities to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.  (Pl.'s Br. at 20-21.) Specifically, McDaniel states:

> Here the ALJ's RFC finding included only the following mental limitations: (1) simple jobs involving simple decision making and (2) occasional contact with the general public and co-workers (Tr. 20).  Not the host of "specific" limitations required by Agency policy.  See SSR 96-8p, 1996 WL 374184[, at] *6.
>
> To be clear, the ALJ is precluded from clumping all of these specific mental limitations together (understand, carry out, and remember instructions; use of judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting) and concluding that an individual can perform unskilled/simple work (with occasional conduct [sic] with public/co-workers).  In other words, this ALJ violated SSA policy by concluding that all of Ms. McDaniel's specific mental limitation[s] equated into "simple," job tasks/simple work (with occasional human contact) (Tr. 20). . . .

(Pl.'s Br. at 21-22 (internal citations omitted).)

Federal regulations require that the ALJ follow mandatory steps when evaluating the severity of mental impairments in claimants, which is known as the "special technique." *See* 20 C.F.R. §§ 404.1520a, 416.920a.  In evaluating mental disorders, the ALJ first considers whether a claimant has a medically determinable mental impairment.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1).  To do so, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of each impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1); *Boyd v. Apfel*, 239 F.3d 698, 705 (5th Cir. 2001). For most Listings, the regulations require the ALJ to evaluate the degree of functional limitation resulting from the claimant's mental impairments pursuant to criteria identified in paragraphs A,

B, and sometimes C, of the adult mental disorders contained in the Listings. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00; 20 C.F.R. §§ 404.1520a(b)(2) & (c), 416.920a(b)(2) & (c).[4] "Paragraph B" contains four broad functional areas: 1) activities of daily living; 2) social functioning; 3) concentration, persistence, or pace;[5] and 4) episodes of decompensation.  20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.[6] The ALJ's written decision must incorporate pertinent findings and conclusions based on the technique and must include a specific finding of the degree of limitation in each of the functional areas described.  20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

After the ALJ rates the degree of functional limitation resulting from any mental impairment, the ALJ determines the severity of such impairment.  20 C.F.R. §§ 404.1520a(d), 416.920a(d).  If the degree of functional loss falls below a specified level in each of the four areas, the ALJ must find the impairment is not severe at Step Two of the sequential evaluation process, which generally concludes the analysis and terminates the proceedings.  20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1).  If the ALJ finds that the mental impairment is severe at Step Two, then the ALJ must determine at Step Three if it meets or equals a listed mental disorder of the Listing.  20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2).[7]  To determine if it meets or is

---

[4] This applies to all adult mental disorders in the Listings except Listings 12.05 and 12.09. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00A.

[5] The category of concentration, persistence or pace "refers to the ability to sustain focused attention and concentration to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R. Part 404, Subpart P., App. 1, § 12.00C(3).

[6] The degree of limitation in the first three functional areas is rated on a five-point scale, which includes none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The degree of the fourth functional area is rated on a four-point scale which includes none, one or two, three, and four or more. *Id.* These four functional areas are known as the paragraph "B" criteria. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00C.

[7] A claimant will be found to have a listed impairment "if the diagnostic description in the introductory paragraph [of the Listing] and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied." 20 C.F.R. Pt. 4, Subpt. P, App. 1 § 12.00A. "The criteria in paragraph A substantiate medically the presence of a particular mental disorder." *Id.* "The criteria in paragraphs B and C describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." *Id.*

equivalent in severity to a listed mental disorder, the ALJ must compare the medical findings about the claimant's impairment and the rating of the degree of functional limitation to the criteria of the appropriate listed mental disorder. 20 C.F.R. §§ 404.1520a(d)(2), 416.920a(d)(2). If the impairment is severe but does not meet or equal a listed mental impairment, then the ALJ must conduct an RFC assessment. 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3); *see Boyd*, 239 F.3d at 705.

As noted above, the responsibility for determining the RFC falls to the ALJ. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). The paragraph B criteria limitations of having moderate limitations in activities of daily living, social functioning, and maintaining concentration, persistence, and pace that the ALJ found following the "special technique" is not an RFC assessment. SSR 96-8p, 1996 WL 374184, at *4. Instead, it is used to rate the severity of McDaniel's mental impairments at Steps 2 and 3 of the sequential evaluation process. *Id.* "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorder listings in 12.00 of the Listing of Impairments." *Id.* These functions include the consideration of the claimant's abilities to: (1) understand, carry out, and remember instructions; (2) use judgment in making work-related decisions; (3) respond appropriately to supervision, co-workers, and work situations; and (4) deal with changes in a routine work setting. *Id.* at *6; *see also* 20 C.F.R. §§ 404.1545(c), 416.945(c). Moreover, "[w]hile the regulations require the ALJ to evaluate[] the limitations imposed by Plaintiff's mental impairments in certain areas and direct the ALJ to proceed to the RFC determination if Plaintiff's impairments are found severe, the regulations do not specifically require the ALJ to find that the limitations found in evaluating the mental impairment must be

word-for-word incorporated into either the RFC determination or the hypothetical question posed to the VE." *Patterson v. Astrue*, No. 1:08-CV-109-C, 2009 WL 3110205, at *5 (N.D. Tex. Sept. 29, 2009).

In this case, the ALJ found, as set forth above, that McDaniel suffered from the severe impairments of major depressive disorder, bipolar disorder, and anxiety disorder. (Tr. 17.) In reaching this determination, the ALJ, based on the evidence in the record, held that McDaniel had mild restriction in activities of daily living (Tr. 18); moderate difficulties in social functioning and concentration, persistence or pace, and no episodes of decompensation which had been of extended duration (Tr. 19). The ALJ further stated:

> Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria.

(Tr. 19.)

The ALJ next found that McDaniel had the RFC "to perform a full range of work at all exertional levels, but is limited to simple job tasks involving simple decision making, occasional public contact, and occasional co-worker interaction." (Tr. 20 (emphasis omitted).) As set forth above, pursuant to SSR 96-8p, the ALJ should have considered McDaniel's ability to perform the following: (1) understand, carry out, and remember instructions; (2) use judgment in making work-related decisions; (3) respond appropriately to supervision, co-workers, and work situations; and (4) deal with changes in a routine work setting. While the ALJ did not use the

exact language set forth in SSR 96-8p, it appears that the ALJ did consider such factors as the factors all appear to relate to some portion of the ALJ's RFC determination.[8]

Moreover, "even if the ALJ fails to conduct a function-by-function analysis, he satisfies this requirement if he bases his RFC assessment, at least in part, on a state medical examiner's report containing a function-by-function analysis." *McCain v. Colvin*, No. 3:12-CV-4001-BF, 2013 WL 6578996, at *3 (N.D. Tex. Dec. 13, 2013); *see Beck v. Barnhart*, 205 F. App'x 207, 213-14, (5th Cir. 2006); *Onishea v. Barnhart*, 116 F. App'x 1 (5th Cir. 2004) (stating that an RFC assessment based in part on the function-by-function analysis of claimant's exertional limitations contained in a state examiner's medical report satisfies the legal standard set forth in SSR 96-8p).[9]  In making his RFC determination, the ALJ gave "great weight" to the mental RFC opinions of the SAMCs.[10]  (Tr. 23.)  Consequently, any failure by the ALJ to conduct a function-by-function analysis in the RFC was satisfied by his reliance on such opinions.

McDaniel also argues that the ALJ erred in not evaluating McDaniel's "difficulty dealing with stress" as required by SSR 85-15, 1985 WL 56857, at *6 (S.S.A. 1985).  (Pl.'s Br. at 22-23.)  However, contrary to McDaniel's claim, the ALJ specifically noted various times in which McDaniel claimed that various events or activities were too stressful (Tr. 20, 23.)  A reading of the ALJ's entire decision indicates that the ALJ did appropriately consider McDaniel's claims of

---

[8] For example, as far as understanding, carrying out and remembering instructions, the ALJ's decision to limit McDaniel to simple job tasks involving simple decision indicates that the ALJ thought McDaniel was limited in her capacity to handle complex instructions.

[9] *Cf. Jones v. Astrue*, No. 3:11–CV–3416–M–BH, 2013 WL 1293900, at *17 (N.D. Tex. Mar.7, 2013), *rec. adopted*, 2013 WL 1296503 (N.D. Tex. Mar.29, 2013) (ALJ erred in failing to conduct a function-by-function analysis of claimant's mental work-related activities listed in SSR 96-8p and she did not rely on any state medical or psychiatric consultant's function-by-function assessment because none was conducted).

[10] In a MRFCA dated August 11, 2011, SAMC Ghai gave opinions related to McDaniel's ability to perform various activities in the following four categories: (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation.  (Tr. 368-69.  These are the four categories set forth in SSR 96-8p that are to be considered by the ALJ in making his RFC determination.

stress and determined that her treatment for depression and stress "continued to be essentially routine and/or conservative in nature through April 2012." (Tr. 22.)

In addition, McDaniel argues that the ALJ erred in failing to include most of the moderate and markedly limited functional limitations found by the SAMC Ghai in the MRFCA. (Pl.'s Br. at 23.)  The limitations referred to by McDaniel are in Section I of the MRFCA, which is titled "Summary Conclusions."  While the Court agrees that the ALJ did not specifically mention the limitations noted in Section I of such assessment, there is "nothing in the commissioner's regulations or rulings that requires an ALJ to make findings concerning each of the limitations listed [in Section I] on the 'Summary Conclusions' portion of the [MRFCA] forms utilized by the SAMCs in assessing a claimant's mental residual functional capacity." *Huber v. Astrue*, No. 4:07-CV-477-A, 2008 WL 4694753, at *7 (N.D. Tex. Oct. 22, 2008). According to the Commissioner's Programs Operations Manual System ("POMS"), Section I of the MRFCA, which contains the limitations that McDaniel claims should not have been left out of the RFC determination, is "merely a worksheet to aid [the medical consultant] in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the RFC assessment."  POMS § DI 24510.060B.2.  Section III of the MRFCA "is for recording the mental RFC determination."  POMS § DI 24510.060B.4.  "It is in this section that the actual mental RFC assessment is recorded, explaining the conclusions indicated in section I, in terms of the extent to which these mental capacities or functions could or could not be performed in work settings." *Id.*  Thus, based upon the MRFCA form itself, it was not error for the ALJ to fail to include or discuss the items from Section I of the MRFCA in assessing McDaniel's mental RFC as they did not contain the actual opinion of SAMC Ghai to McDaniel's RFC.  Because the ALJ did not err, remand is not required.

## RECOMMENDATION

It is recommended that the Commissioner's decision be affirmed.

## NOTICE OF RIGHT TO OBJECT TO PROPOSED
## FINDINGS, CONCLUSIONS, AND RECOMMENDATION
## AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions, and recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a de novo determination of those portions of the United States Magistrate Judge's proposed findings, conclusions, and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party is granted until **March 12, 2015**, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED February 26, 2015.

_____
JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE

JLC/knv